UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-------------------------------------------------------
                       :

KEYBANK NATIONAL ASSOCIATION,  :

               Plaintiff,     :       CASE NO. 1:11-CV-02125

                       :

vs.                       :       OPINION & ORDER

                       :       [Resolving Doc. Nos. 33, 63, 64]

COUNTRYWIDE HOME LOANS, INC,  :

*et al.*,                     :

               Defendants.   :

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The parties to this case dispute whether payments are owed under a settlement agreement between Plaintiff KeyBank National Association ("KeyBank") and Defendants Countrywide Home Loans, Inc., Bank of America, N.A., and Bank of America Corp. ("Bank of America").[1] KeyBank says that Bank of America makes claim for reimbursements not recoverable under the parties' settlement agreement.[2] KeyBank asks this Court to interpret whether the settlement agreement requires the payment of Bank of America's claims of reimbursement.[3] Bank of America says that the settlement agreement entitles it to seek reimbursement for all of its claims.[4] For the reasons below, the Court interprets the settlement agreement as follows:

1)    Bank of America may only seek reimbursement for payments for services rendered on or after January 1, 2013;

2)    Bank of America may seek reimbursement for property taxes only for property tax payments

---

[1] Doc. 33.

[2] *Id.*

[3] *Id.*

[4] Doc. 34.

Case No. 1:11-CV-02125
Gwin, J.

made after December 31, 2012, that reflect taxes accruing for tax periods after December 31,

2012; and

3)    Bank of America may seek reimbursement for insurance and other payments only for

insurance coverage on or after January 1, 2013.or services provided on or after January 1,

2013.

## I. Factual and Procedural Background

On October 7, 2011, Plaintiff KeyBank National Association sued Defendants Countrywide

Home Loans, Inc., Bank of America, N.A., and Bank of America, Corp.[5]    As background to

KeyBank's lawsuit, KeyBank and Defendants had entered into contracts to have Defendants service

residential mortgages that KeyBank owned.[6]   KeyBank said that Defendants had breached the

contracts by failing to notify KeyBank of delinquent mortgages, by taking improper action on

delinquent mortgages or in foreclosure proceedings, by charging KeyBank for mortgages Defendants

should not have been servicing, and by filing inaccurate and incomplete reports with KeyBank.[7]

KeyBank brought three counts of breach of contract, two counts of intentional interference

with contractual relations, and one count of unjust enrichment.[8]   KeyBank also sought a declaratory

judgment that Defendants indemnify KeyBank for all costs arising from Defendants' purported

breaches.[9]

On December 31, 2012, KeyBank and Defendants signed a confidential settlement agreement

---

[5] Doc. 1.

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

Case No. 1:11-CV-02125
Gwin, J.

and release of claims.[10]  The settlement agreement stated that the prior contracts between KeyBank and the Defendants would terminate but that Defendants would continue to service KeyBank's mortgages for a time.[11]  KeyBank would pay Defendants for the "Servicing Advances" and "Servicing Fee[s]" "made, incurred, or earned" by Defendants after December 31, 2012.[12]  In other words, KeyBank would have no obligation to reimburse Bank of America for any expense "made, incurred, or earned" before December 31, 2012.

The settlement also contemplated that the parties would sign a new "Servicing Rights Purchase and Sale Agreement."[13]  At its essence, the settlement concluded disagreements regarding their relationship before December 31, 2012, but allowed Bank of America to seek reimbursement but only if the expenses were both made and incurred after December 31, 2012, as the parties moved the loan servicing to others.

On January 2, 2013, the Court dismissed the case with prejudice and retained jurisdiction over any future settlement disputes.[14]  On January 10, 2013, the Court approved the parties' stipulated dismissal.[15]

On February 19, 2013, the parties signed a servicing rights purchase and sale agreement.[16]  Under that agreement, the Defendants continued servicing KeyBank's mortgages until May 31,

---

[10]/Doc. 44-1.  Bank of America redacted the settlement agreement in accordance with the Court's Amended Stipulated Protective Order.  *See* Doc. 23.

[11]/Doc. 44-1 at 5-6.

[12]/*Id.* at 6.

[13]/*Id.* at 4.

[14]/Doc. 30.

[15]/Doc. 32.

[16]/Doc. 33-1.

Case No. 1:11-CV-02125
Gwin, J.

2013.[17]  By May 31, 2013, KeyBank would designate a new servicer, and Defendants would transfer

the mortgages to the designee.[18]  KeyBank agreed to reimburse Defendants for, among other things,

"Servicing Advances incurred by [Defendants] on or after January 1, 2013."[19]  The parties agreed

that "under no circumstances shall [KeyBank] be required to reimburse Seller for . . . any Servicing

Advances made or incurred by Seller on or before December 31, 2012."[20]

On September 10, 2013, KeyBank notified the Court that the parties disputed whether certain

of the Defendants' claims for reimbursement were "incurred" before January 1, 2013.[21]  Bank of

America requested $2,259,906 in reimbursements, while KeyBank said it should only have to pay

$1,043,185.[22]  Because KeyBank had already paid Defendants $1,296,656, KeyBank seeks a refund

of $253, 471.[23]

For its argument, Bank of America says that all of its claims are reimbursable under the

settlement agreement and that KeyBank owes Bank of America $963,250.[24]

After an unsuccessful attempt to mediate the dispute,[25] the Court scheduled this matter for

a hearing, ordered Bank of America to file a copy of the accounting of servicing advances for which

it claimed reimbursement, and ordered the parties to file position papers concerning a mortgage

servicer's escrow payments for property taxes, which the Court understood to be the bulk of disputed

---

[17]/*Id.* at 2.
[18]/*Id.* at 2-3.
[19]/*Id.* at 4.
[20]/*Id*
[21]/Doc. 33.
[22]/*Id.* at 4.
[23]/*Id.*
[24]/Doc. 34.
[25]/Doc. 42.

-4-

Case No. 1:11-CV-02125
Gwin, J.

charges.[26]

On December 2, 2013, the Court received computer files containing spreadsheets that purported to contain the accounting of servicing advances from Bank of America.[27]

On December 6, 2013, the parties filed position papers concerning the property tax issues identified by the Court.[28]

On December 12, 2013, the Court received additional computer files including spreadsheets that Bank of America says show the corrected accounting of servicing advances from Bank of America.[29]  In a supplemental position paper, Bank of America said that it conceded that $72,164.51 of servicing advances was not reimbursable under the settlement and reduced its claim by that amount.[30]

On December 13, 2013, the Court held a hearing at which the parties presented argument on when Bank of America incurred servicing advances, including escrow payments for property taxes.[31] At the hearing, it became apparent that Bank of America's accounting of servicing advances included *all* servicing advances made for KeyBank's mortgages, not just the advances for which Bank of America sought reimbursement.  For many accounts, Bank of America sought reimbursement even though the spreadsheets showed at least partial positive escrow balances.  The Court, therefore, ordered the parties to submit a new accounting that contained only those advances for which Bank of America claimed reimbursement and to file position papers on the new accounting.

---

[26] Doc. 43.
[27] Doc. 46.
[28] Docs. 47, 48.
[29] Doc. 54.
[30] Doc. 55.
[31] Doc. 56.

Case No. 1:11-CV-02125
Gwin, J.

On January 10, 2014, the Court received computer files containing spreadsheets that purported to be the supplemental accounting of servicing advances from Bank of America.[32/]  The same day, the parties also filed position papers on the supplemental accounting.[33/]  In its position paper, Bank of America said that the accounting contained additional escrow payments unrelated to property taxes that it included for the first time in the spreadsheets but had always sought reimbursement for.[34/]  Bank of America also said it realized it had undercharged KeyBank by $232,204 but would not seek reimbursement for that amount at this time.[35/]

KeyBank says that the supplemental accounting fails to provide information necessary to determine whether an advance was incurred in 2013 and that KeyBank should not have to continue to review confusing accounting statements.[36/]  Therefore, KeyBank asks the Court to deny Bank of America any additional reimbursements.[37/]

After extensive briefing, this dispute is ripe for resolution.[38/]

## II. Analysis

The parties dispute whether certain servicing advances were incurred after December 31, 2012.  Central to this dispute, is the parties agreement that Bank of America could only be reimbursed if the expense was both incurred after December 31, 2012, and the payment was made after December 31, 2012.  This Court must decide when the "Servicing Advances" and "Servicing

---

[32/]Doc. 60.

[33/]Docs. 61, 62.

[34/]Doc. 61 at 3 n.2.

[35/]*Id.* at 5.

[36/]Doc. 62.

[37/]*Id.*

[38/]On January 15, 2014, Bank of America filed two motions for leave to file a response brief: one unredacted and one under seal.  Docs. 63 (unredacted), 64 (under seal).  KeyBank opposes the motion.  Doc. 65.  At this point, there has already been extensive briefing on these issues, and the Court does not need additional argument to decide the dispute.  The Court **DENIES** Bank of America's motions.

Case No. 1:11-CV-02125
Gwin, J.

Fee[s]" were "made, incurred, or earned." Accordingly, the Court will interpret when a mortgage servicer "incur[s]" these types of advances.  Generally, a person "incur[s]" an expense when the person becomes liable for or subject to paying the expense.[39/]

Bank of America has divided these expenses into two general categories: "Corporate Advances" and "Escrow Advances."  The "Escrow Advances can also be divided into property tax advances and other escrow advances.  The Court applies the definition of "incur[]" to each in turn.

## A.    Non-Escrow Corporate Advances

Bank of America says that it no longer requests reimbursement for non-escrow advances for services performed before 2013 and that there is no longer a dispute between the parties about these advances.[40/]  However, in case the parties do still have a dispute about these advances, the Court will determine when these expenses were incurred.

These corporate advances are for expenses such as inspections of the properties, changing of locks, photographs, and title fees.

A mortgage servicer becomes liable for a debt to a service provider when the service is performed.  This is because the service provider has performed its obligation under a contract with the mortgage servicer.  It is irrelevant when the service provider submits an invoice for the work; the invoice merely tells the mortgage servicer how to pay the debt that the mortgage servicer has already

---

[39/]*E.g.*, *Hall v. United States*, ___ U.S. ___, ___, 132 S. Ct. 1882, 1892 (2012) ("the ordinary meaning of 'incur' [is] bringing a liability on oneself"); *United States v. Baird*, 134 F.3d 1276, 1284 & n.5 (6th Cir. 1998) ("the term 'incurred costs' refers to an obligation to pay costs"); *Marcum v. State Auto Mut. Ins. Co.*, No. CA2004-11-098, 2005 WL 2130086, at *4 (Ohio Ct. App. Sept. 6, 2005) ("'incur' means 'to become liable or subject to'"); *Fuerstenberg v. Mowell*, 409 N.E.2d 1035, 1036 (Ohio Ct. App. 1978) ("The plain meaning of the word 'incur' is to 'become liable or subject to.' The term is one of common usage and meaning." (citation omitted)); *Walsh v. Grange Mut. Cas. Co.*, 204 N.E.2d 690, 691 (Ohio Ct. App. 1964) ("The word 'incur' is of common usage and meaning.  It is defined by Webster's Third New International Dictionary as: '1. To meet or fall in with ***; become liable or subject to; bring down upon oneself***.'").

[40/]Doc. 61 at 2-3.

-7-

Case No. 1:11-CV-02125
Gwin, J.

incurred.

Accordingly, Bank of America only incurred corporate advances—and therefore is entitled to reimbursement for them—if the service was rendered on or after January 1, 2013.  Bank of America has provided sufficient information to show that it is entitled to a reimbursement of $653,017.69 for these corporate expenses.

**B.      Escrow Advances for Property Taxes**

Bank of America says that it incurs the expense of paying deficiencies in a borrower's escrow for property taxes when the taxes are due, even if Bank of America pays the money before the taxes are due.[41]  KeyBank says that Bank of America incurs that expense on the last day of the tax period.[42]  The Court agrees with KeyBank.

In deciding this issue, the Court finds the language chosen by KeyBank and Bank of America most important.   In that agreement, the parties cabined KeyBank's obligation: "under no circumstances shall [KeyBank] be required to reimburse [Bank of America] for . . .(ii) any Servicing Advances made or incurred by Seller on or before December 31, 2012."[43]  Using the disjunctive, the parties agreed that Bank of America could not be reimbursed for advances either made or advances incurred on or before December 31, 2012.  Bank of America has no right to reimbursement for payments made after December 31, 2012, if the obligation was incurred before December 31, 2012.

A mortgage servicer is contractually liable to pay any deficiency between the property taxes due and the borrower's escrow payments.  The obligation to make up that deficiency attaches when the borrower incurs the obligation to pay the property taxes for a particular period.  Therefore, Bank

---

[41]/Doc. 34 at 3, 12.

[42]/Doc. 47 at 3-4.

[43]/Doc. 33-1 at 4 (emphasis added).

Case No. 1:11-CV-02125
Gwin, J.

of America incurs the expense of making an escrow payment on property taxes on the last day of each property tax period.

Accordingly, Bank of America may only seek reimbursement for tax periods that ended on or after January 1, 2013.

It is irrelevant that Bank of America does not know the precise payment it must make at the close of the tax period. Just because there may not be a deficiency or a subsequent escrow payment may decrease the amount Bank of America must pay does not mean that Bank of America did not incur the obligation to pay at the close of the tax period. The fact that the parties distinguished between advances "made" and advances "incurred" also suggests that the parties meant those were different times. If Bank of America did not incur the escrow advances until it knew the amount it would have to pay, the date the advance was incurred would be the same as the date the advance was made: the date Bank of America actually made the payment. That outcome would go against the parties' intent in distinguishing "made" and "incurred."

It is also irrelevant that federal regulations encourage Bank of America not to pay the property taxes until near the due date. The fact that Bank of America may not be able to pay the taxes until later does not mean it does not incur the obligation to pay at that time.

And it is irrelevant that Bank of America receives an invoice at a later date. Like the corporate advances, the invoice tells Bank of America how to pay the debt the borrower and Bank of America have incurred. It does not change the fact that the borrower and, by contract, Bank of America incurred the expense earlier.

Accordingly, Bank of America may only receive reimbursement for property tax payments made after December 31, 2012, that reflect taxes accruing for tax periods after December 31, 2012.

Case No. 1:11-CV-02125
Gwin, J.

Unfortunately, the Court is unable to determine from the spreadsheets what amount Bank of America is entitled to be reimbursed for.  Based on the most recent spreadsheets, Bank of America appears to have made $549,007.28 of qualifying escrow advances for property tax periods beginning in 2013. However, because Bank of America has provided several different versions of the spreadsheets that contain slightly different data, the Court requires Bank of America to submit proof of these advances as described below.

**C.      Other Escrow Advances**

In addition to property taxes, borrowers make insurance payments through escrow.  Under the servicing agreement, the mortgage servicer also must make up any deficiencies between the escrow account and the insurance bill.

Under the parties' servicing agreement, Bank of America is entitled to be reimbursed for all insurance payments made after December 31, 2012, for insurance periods after December 31, 2012 to the extent that the borrower's escrow balance is insufficient to pay the insurance premium.

Bank of America may receive reimbursement for insurance payments for insurance coverage after December 31, 2012.  Again, the Court cannot determine from the spreadsheets which payments may be reimbursed.

### III. Conclusion

The Court **DENIES** Bank of America's motions for leave to file response papers.  The Court also interprets when Bank of America incurred each type of expense as stated in this opinion.

Because Bank of America has not provided spreadsheets to the Court or to KeyBank with the relevant information to determine which escrow advances Bank of America may be reimbursed for, the Court orders Bank of America to submit a spreadsheet containing the following information

-10-

Case No. 1:11-CV-02125
Gwin, J.

before KeyBank must pay any additional reimbursements: for each individual payment Bank of America claims reimbursement for, it must provide the loan number, a detailed description of the payment, the amount of the payment, the escrow balances before and after payment, and the date the payment was incurred as described in this order.  For property tax escrow advances, Bank of America must provide the last day of the tax period.  And for all other escrow advances, it must provide the date that insurance coverage or other service was to begin.

Bank of America must provide this accounting within 21 days of this order.  Within 21 days of receiving the accounting, the parties must settle whatever obligations they have to each other: KeyBank must pay the reimbursements that it has not already paid or Bank of America must refund KeyBank for what it overcharged KeyBank at that time.

IT IS SO ORDERED

Dated: February 5, 2014                          s/      *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE

-11-